# EXHIBIT B

# EXHIBIT B-1

**HCDistrictclerk.com** STANFORD, DEBORAH vs. STATE FARM LLOYDS 9/30/2019
Cause: 201959738 CDI: 7 Court: 269

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|--------|----------|-----------|------|-----|
| 87353972 | Defendant's Original Answer | | 09/30/2019 | 6 |
| 87208640 | Civil Process Pick-Up Form | | 08/27/2019 | 1 |
| 86813954 | Plaintiffs Original Petition Request for Disclosures Request for Production Interrogatories Request for Admissions and Jury Demand | | 08/26/2019 | 29 |

# EXHIBIT B-2

8/24/2019 4:11 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36250589
By: Nancy Torres
Filed: 8/26/2019 12:00 AM

CAUSE NO. _____

| | | |
|---|---|---|
| Deborah Stanford, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| State Farm Lloyds | § | |
| | § | |
| *Defendant* | § | |
| | § | |
| | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR DISCLOSURES, REQUEST FOR PRODUCTION, INTERROGATORIES, REQUEST FOR ADMISSIONS AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF Deborah Stanford ("Plaintiff") and files this Original Petition against State Farm Lloyds ("Defendant") and, in support thereof, would respectfully show the Court the following:

### I.
### DISCOVERY CONTROL PLAN AND MONETARY RELIEF

1.    Plaintiff intends to conduct discovery under Level 2. Tex. R. Civ. P. 190.3.

2.    Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees. Tex. R. Civ. P. 47(c)(4).

### II.
### CONDITIONS PRECEDENT

1

3.      Pursuant to Tex. R. Civ. P. 54, Plaintiff asserts that all conditions precedent to recovery have been performed or have occurred.

### III.
#### PARTIES, JURISDICTION AND VENUE

#### A.      PARTIES.

4.      Plaintiff Deborah Stanford is a Texas resident(s), who resides at 122 Sage Street, Harris County, Lake Jackson, TX  77566.

5.      Defendant State Farm Lloyds is an insurance company doing business in the State of Texas, which may be served through Corporation Service Company at 211 E 7th St. Suite 620 Austin, TX 78701-3218.   As it relates to the event giving rise to this Petition, Plaintiff invokes the right to institute this suit against any entity that was conducting business using the assumed or common name of State Farm Lloyds.  Pursuant to Tex. R. Civ. P. 28, Plaintiff moves the Court to order Defendant to substitute its true name if different from the name stated herein.

#### B.      JURISDICTION.

6.      The Court has subject matter jurisdiction over this cause of action because it involves an amount in controversy in excess of the minimum jurisdictional limits of the Court.

7.      The Court has both general and specific personal jurisdiction over Defendant. The Court has general jurisdiction over Defendant, as Defendant has sufficient minimum contacts with and within this State and has purposefully availed itself of the privilege of conducting activities within this State, thus invoking the benefits, protections, and obligations of this State's laws.  Defendant's contacts with this State, which are continuous and systematic, include doing business in Texas, selling and delivering insurance products in Texas, entering into contracts for insurance in Texas with Texas residents, insuring property located in Texas,

2

underwriting insurance policies in Texas, accepting policy premiums in Texas and adjusting insurance claims in Texas.   This activity was not the unilateral activity of another party or a third person.

8.      Defendant's contacts with Texas, relied upon by Plaintiff, were purposeful and were not random, fortuitous, or attenuated, and are thus subject to the jurisdiction of this State in suits based on its activities.  The Court has jurisdiction over Defendant because: (1) Defendant purposefully availed itself of the benefits of conducting activities in Texas, and (2) the cause of action arises from or relates to those contacts or activities.

9.      The Court has specific jurisdiction over this matter as it involved the execution, performance, and breach of a Texas insurance contract with Plaintiff, who is a Texas resident, with regards to an insured risk and/or property located in Texas.  As a matter of law, Defendant conducted business in this State because, without limitation, Defendant conducted the business of insurance in Texas and committed one or more torts and/or violated the Texas DTPA and/or Insurance Code, in whole or in part in this State, against Plaintiff in Harris County, Texas. Defendant has sufficient and/or minimum contacts with this State, and thus Plaintiff affirmatively assert the Court's exercise of jurisdiction over Defendant comports with "traditional notions of fair play and substantial justice."

### C.   VENUE.

10.     Venue is proper in Harris County because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County. Tex. Civ. Prac. & Rem. Code § 15.002(a)(l).  The property subject to this dispute and which is owned by Plaintiff is located in Harris County.  The insurance policy insuring the property was executed in Harris County. The

damage to the property resulted from an event or occurrence in Harris County. The resulting insurance claim that was made by Plaintiff, the property inspection performed by Defendant, and the denial and/or underpayment of the insurance claim by Defendant occurred in Harris County.

## IV.
### FACTUAL BACKGROUND

11.    Deborah Stanford is a named insured under a property insurance policy issued by State Farm Lloyds. The policy number is ***9085.

12.    On August 28, 2017, Hurricane Harvey hit the Texas coast, which included Harris County. This resulted in roof and interior damage to Plaintiff's home. Specifically, the storm lifted, tore and removed shingles on the roof, allowing water to enter into the home. Consequently, portions of the ceiling were stained by the water and the ceiling began to peel in various rooms of the home. Furthermore, due to the roof damage a large hole was created in the ceiling. Plaintiff mitigated damages by covering the hole with a plastic tarp and she also replaced portions of the damaged roof. Thereafter, Plaintiff filed a claim on her insurance policy.

13.    Plaintiff asserts that Defendant improperly denied and/or underpaid the claim.

14.    Plaintiff asserts that Defendant conducted a substandard investigation and inspection of the property, prepared a report, which did not include all of the damages that were observed during the inspection, and undervalued the damages observed during the inspection.

15.    Defendant performed an outcome-oriented investigation of Plaintiff's claim. Defendant's (improper) claims handling included Defendant's biased claims adjustment, and an unfair and inequitable evaluation of Plaintiff's losses on the property. In addition, Defendant's claims handling included both an unreasonable investigation and underpayment of Plaintiff's claim.

4

## V.
### CAUSES OF ACTION AND ATTORNEY'S FEES

16.     Plaintiff incorporates the foregoing for all purposes.

### A.     BREACH OF CONTRACT

17.     Plaintiff and Defendant entered into an insurance contract. Defendant breached this contract by, without limitation, inadequately and/or improperly investigating Plaintiff's insurance claim,   wrongfully denying and/or underpaying the claim.  Defendant damaged Plaintiff through its actions and/or inactions described herein.

### B.     PROMPT PAYMENT OF CLAIMS STATUTE

18.     Defendant's failure to pay for Plaintiff's losses and/ or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.001 *et seq.* of the Texas Insurance Code, including without limitation §§ 542.055-.058.

19.     In addition to Plaintiff's claim for damages, Defendant's violation of the Tex. Insurance Code entitles Plaintiff to penalties, interest and attorney's fees as set forth in Section 542.060 of the Texas Insurance Code.

### C.     BAD FAITH

20.     Defendant is an insurance company and insured Plaintiff's property. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

21.     Defendant violated Section 541.051 of the Texas Insurance Code by, without limitation, making statements misrepresenting the terms and/or benefits of the policy.

22.     Defendant also violated Section 541.060 by, without limitation:

    a.     Misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

5

b.   Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

c.   Failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromised settlement of a claim;

d.   Failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and/or

e.   Refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

23.   Defendant violated Section 541.061 by, without limitation:

a.   Making an untrue statement of material fact;

b.   Failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

c.   Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

d.   Making a material misstatement of law; and/or

e.   Failing to disclose a matter required by law to be disclosed.

24.   Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to Texas Insurance Code Section 541.152(a)-(b).

**D.** **Additional Claims & Damages**.

25.    Plaintiff also seeks to recover damages and/or actual damages "caused by" Defendant's Insurance Code violations.   This includes, without limitation, damages resulting from Defendant's delay in payment, resulting from Defendant's unreasonable investigation. This includes, without limitation, costs for temporary repairs, additional property damage to Plaintiff's home during the pendency of the claims process and this litigation, costs associated with appraisal costs or sums related to pre-appraisal damage assessments.

26.    Plaintiff also seeks damages to compensate Plaintiff for the tangible and intangible consequences, suffering, stress and mental anguish of having to live with an unrepaired home for months.

**E.** **ATTORNEY'S FEES**

27.    Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorney's fees and expenses through trial and any appeal.

28.    Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because an attorney that represents Plaintiff presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

29.    Plaintiff further prays that she be awarded all reasonable attorney's fees incurred in prosecuting her causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

**VI.**
**DISCOVERY REQUESTS**

7

30.     Pursuant to Tex. R. Civ. P. 194, 195, 196, 197 & 198, and in accordance with the instructions stated therein, Plaintiff requests that Defendant respond to the attached Request for Disclosures, Request for Production, Interrogatories, and Request for Admissions within fifty (50) days of its receipt of the same.  See Exhibit A, attached hereto.

## VII.
### Tex. R. Civ. P. 193.7 Notice.

31.     Pursuant to Tex. R. Civ. P. 193.7, the undersigned hereby notifies all parties and counsel of record that Plaintiff may introduce into evidence at the time of trial or pre-trial, those documents produced by all parties in response to requests for production and/or requests for disclosure in this matter.

## VIII.
### Jury Demand

32.     Pursuant to Tex. R. Civ. P. 216, Plaintiff hereby demands trial by jury and has tendered the appropriate fee.

## IX.
### Prayer

33.     WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that, after due process of law, Plaintiff have judgment against Defendant for actual damages, together with exemplary damages, statutory damages, treble damages, statutory interest, pre-judgment interest, post-judgment interest, attorney's fees, costs of suit, and for all such other and further relief, both general and special, in law and in equity, to which Plaintiff may be justly entitled.

8

Respectfully submitted,

LAW OFFICES OF MANUEL SOLIS, PC
6657 Navigation Blvd.
Houston, TX 77011
Phone: (713) 277-7838
Fax: (281) 377-3924

By: /s/ *Stephen R. Walker*
Stephen R. Walker
Texas Bar No. 24034729
Email: swalker@manuelsolis.com
Gregory J. Finney
Texas Bar No. 24044430
Email: gfinney@manuelsolis.com
Juan A. Solis
Texas Bar No. 24103040
Email: jusolis@manuelsolis.com

ATTORNEYS FOR PLAINTIFF

9

## EXHIBIT A

### PLAINTIFF'S REQUEST FOR DISCLOSURES TO DEFENDANT

1.      Pursuant to Tex. R. Civ. P. 194 & 195, Plaintiff serves her Request for Disclosures upon Defendant.  Plaintiff requests that Defendant provide the information or material described in Rules 194.2(a) through (l) and 195.  Defendant's responses to the same are due within 50 days of the service of this request.

### PLAINTIFF'S REQUEST FOR PRODUCTION, INTERROGATORIES AND REQUEST FOR ADMISSIONS TO DEFENDANT

2.      Pursuant to Tex. R. Civ. P. 196, 197 and 198, Plaintiff serves her Request for Production, Interrogatories and Request for Admissions upon Defendant.  Defendant's responses to the same are due within 50 days of the service of these requests.

### DEFINITIONS

3.      The following terms are defined and used in these requests as follows:

4.      "**Plaintiff**", "**Plaintiff**(s)" means **Deborah Stanford**, and all representatives acting or purporting to act on their behalf with respect to any matter inquired about in these discovery requests.

5.      "**Defendant**", "**Defendant**(s)" means **State Farm Lloyds**, and all representatives, purporting to act on its behalf with respect to any matter inquired about in these discovery requests.

6.      "**You**" or "**Your**" or "**Yours**" or "**Yourself**" means **State Farm Lloyds**, and all representatives acting or purporting to act on your behalf with respect to any matter inquired about in these discovery requests.

7.      The term "**person**" or "**individual**" or "**entity**" means and includes, without limitation, every natural person, association, firm, partnership, corporation, board, committee, agency, commission, legal entity of any form or type, and every other organization or entity, whether public or private.

8.      The singular and masculine form of any noun or pronoun includes the plural, the feminine, and the neutral.

9.      "**Statement**" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electronic or other recording or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.  This includes any "**Witness Statement**." *See* Tex. R. Civ. P. 192.3(h)

10

10.     "**Document**" or "**Documents and Materials**" includes, but is not limited to, the originals and all copies of written, reported, recorded or graphic matter however produced or reproduced, which is now or was at any time in the possession, custody, or control of the producing party, the party's attorneys, accountants, or any of their agents, including but not limited to, all papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, and any other data compilations from which information can be obtained and translated, if necessary, by the person from whom production is sought, into reasonably usable form, or all of the foregoing upon which notations and writings have been made and which do not appear on the original.

11.     "**Identify**" when referring:

    a.  to a person, means to state his or her full name, present or last known business or residential address, e-mail address and phone number;

    b.  to a public or private corporation, partnership, association, or organization, or a governmental agency, means to state its full name, present or last known business address, e-mail address, and phone number;

    c.  to a statement, means to identify who made it, who took or recorded it, and all persons, if any, present during the making thereof; to state when, where, and how it was taken or recorded; and to identify who was present or had last known possession, custody, or control thereof;

    d.  to a document, means to give a reasonably detailed description thereof, including, if applicable, when, where, and how it was made; to identify who made it; and to identify who was present or had last known possession, custody or control thereof; and,

    e.  to any other tangible thing, means to give a reasonably detailed description thereof, including, if applicable, when, where, and how it was made; to identify who made it; and to identify whom has present or had last known possession, custody or control thereof.

12.     The phrases "**relating**", "**relating to**", "**all documents relating to**", "**all documents related to**", and "**all other documents relating to**" (along with all similar phrases) mean and include all documents that relate in any way to the subject matter in question and/or the subject matter of the specific request, including, without limitation, all documents that contain, record, reflect, summarize, evaluate, comment upon, or discuss that subject matter or that in any manner state the background of, or were the basis for, or that relate to, record, evaluate, comment upon, or were referred to, relied upon, utilized, generated, transmitted, or received in arriving at conclusion(s), opinion(s), estimate(s), position(s), decision(s), belief(s), or assertion(s) concerning the subject matter in question.

13.     "**Communication**" refers to any transmission of information, including without limitation correspondence, documents, reports, telephone calls, e-mail, text messages, private messages, or conversations.

14.     "**Demand**" or "**Legal Demand**" or "**Demand Letter**" refers to any demand or notice of claim sent to you by Plaintiff's counsel on or about August 23, 2019.

15.     "**Lawsuit**" means the lawsuit styled captioned above in the "**Petition**" filed in the Judicial District Courts of Harris County, Texas.

16.     "**Petition**" refers to the Original Petition along with all amendments and supplements thereto.

17.     "**Cause**" or "**Matter**" are generic references encompassing any one or all the following: the Claim, Demand, Claim-related dispute, Lawsuit, and Petition.

18.     "**Damage(s)**" or "**Loss(es)**" or "**Property Damage**(s)" is the property damage(s) sustained by the Subject Property made the basis of the Claim, the denial of which is made the basis of the Lawsuit.  This term includes "Other damages."

19.     "**Other Damages**" means debris removal, temporary repairs, tree and shrub removal, personal property removal and storage, loss of use and additional living expenses.

20.     "**Insured Location**" or "**Subject Property**" shall mean and refer to real property located at 122 Sage Street Lake Jackson, TX 77566. Insofar as the Claim relates to damage to "Other Property" not physically located at this address, but still covered by the Policy, include such property as being part of the "Subject Property."

21.     "**Dwelling**" or "**Residence**" means the dwelling located at the Insured Location at the time of the Event.

22.     "**Commercial Structure(s)**" are insured commercial building(s) or structures at the Insured Location.

23.     "**Other Structures**" means any insured structures located at the Insured Location during the Event that are set apart from the Residence (or) Commercial Structure by a clear space, including those connected only by a fence, utility line, or similar connection.

24.     "**Personal Property**" means any or all of the personal property and business personal property that is the subject of the claims made against Defendant(s) in this Lawsuit.

25.     "**Other Property**" means any other type of insured property or chattel property made the basis of the Claim, whether or not located at the insured location.

26.     "**Date of Loss**" or (as abbreviated) "**DOL**," is August 26, 2017 and/or the date the insured property was damaged.

27.     The "**Relevant Time Frame**," or "**Relevant Period**" (unless otherwise specified) is from August 26, 2017 through the present.  If a different period and/or time frame is relevant to a

particular request, that request will say so.  If it does, follow the time frame specified.

28.     "**Policy**" is policy number State Farm Lloyds Policy No. xxxx9085 and/or all relevant policies of insurance purchased from, and issued by you as to the Subject Property. If more than one insurance policy is applicable and/or relevant to the Claim and Lawsuit, then the term Policy as used below refers to all such Policies.

29.     "**Policy Period**" is the effective date of the Policy, i.e., the Policy inception date, and termination date, for the Policy in place during the Date of Loss.

30.     "**Declarations**" or "**Declarations Page**" which is sometimes referred to informally and/or in abbreviated form as the "**Dec Page**," is normally the front page (or pages) of a policy that specifies the named insured, address, policy period, location of premises, policy limits, and other key information that varies from insured to insured.

31.     "**Claim**" is the claim for Property Damage lodged by Plaintiff(s) for the Event, i.e., the Plaintiff's claim for damage reported to you.  Depending on context or matter facts, this may also encompass the Demand Letter sent by Plaintiff's counsel.

32.     "**Other Claim**(s)" means other claims for property damage other covered loss, including prior claims made by Plaintiff(s) relative to the Subject Property, which does not include or encompass the Claim and/or the allegations made the basis of the Lawsuit.

33.     "**Claim number**" is and/or shall refer to the number assigned by you to Plaintiff's Claim, specifically 533072Q77.

34.     The "**Event**" is Hurricane Harvey which occurred in and around Harris County, TX on August 26, 2017.

35.     "**Handle**" or "**Handled**" or "**Handling**" means claims activity including without limitation, adjusting, supervision, estimating, settling along with all activity related to your receipt, adjustment and settling or denying the Claim.

36.     "**Claim File**" is all paper and electronic records and information obtained, kept and/or maintained by you or on your behalf, which relates to the Claim(s) submitted by Plaintiff(s) for the Loss.  This includes, without limitation:

>    a.  Correspondence or records of communication with Plaintiff(s) and any person related to the Claim.  It includes all Claim(s) handling information, Claim(s) adjustment, internal Claim notes, recording(s), annotations, inspections, inspection reports, field notes, and communications with inspectors or adjusters, request for information to and from any person or entity, which relate to the Claim.
>    b.  All information, which you received, reviewed, cross-referenced, relied upon relative to your handling and disposition of the Claim.  This includes all

references to any internal deadlines and your set for yourself.

    c.   All other claim or underwriting file(s), for any *other* and/or previous loss claim made by the Plaintiff(s) relative to the Subject Property, used as part of your evaluation, adjustment, denial, or payment regarding the Claim.  This includes the claim file for these others claims inclusive of all documents, reports, photographs, and files of all inspection of the Subject Property, inspection reports of any kind, and all estimates of damage.

    d.   Insofar as the "Claim File" includes claim-handling guideline(s) promulgated by you, and/or the Claim File makes any implicit or explicit reference to such guideline(s), include your production such guideline(s) along with the claim file unless otherwise produced in response to another request.

    e.   Insofar as you produce any guideline separately, you must produce or identify information, which connect and/or identify the connection between the claim file reference and the guideline, which you separately produced.

37.    "**Underwriting File**", means documents or information you (and for the purpose of this definition, your underwriters and/or underwriting department) reviewed as part of your process of determining whether to insure the Subject Property, including your evaluation of risk and/or acceptable risk and the rate you charged for the relevant risk Policy.  This includes your inspection of the Subject Property <u>anything</u>, which you reviewed as part of our underwriting process.  It also includes any correspondence and documents exchanged between you, your agent or any independent agent and your underwriter(s) and/or underwriting department, including without limitation questions and answers exchanged between any agent and underwriter(s) regarding the Subject Property relating to insuring and/or binding the policy for the relevant Policy Period or preceding policy period.

38.    "**Reserve**(s)" money set aside or "reserved" to meet future payments associated with the Claim (or claims related to the Event) incurred but not yet settled at as of the date such reserve(s) is/are set.  This includes initial reserves and all amendments or revisions to reserves made over time.

39.    "**Third Party**" means persons or entities other than the parties and their employees.

40.    "**Insurance Agent**" means the person and/or entity that sold the Policy to Plaintiff.  This definition includes any independent insurance agent.

41.    "**Covered Peril**" is a damage risk or cause of loss covered by the Policy.

42.    All definitions should be given their common sense meaning and/or be construed as broadly as possible. If you do not understand a definition, or if you believe a definition precludes you response to discovery request absent further clarification, it is incumbent on you to clarify the definition versus objecting to same and using any such objection as the putative basis for refusing to respond and/or produce documents.   Likewise, if a particular definition does not apply to you / your company, explain this in your response.  By way of hypothetical example, if your company does not create declaration pages, explain this in your response, or identify the

14

document, which carries a different name, but you (believe) serves the same or similar purpose.

## **INSTRUCTIONS**

43. <u>You have the duty to supplement under the rules</u>. Pursuant to Tex. R. Civ. P. 193.5, you are under an affirmative duty to supplement your responses to all discovery requests with information that you may acquire after filing your written response, if such information makes it known to you that your previous response was incorrect or incomplete when made, or, if the answer though correct and complete when made, is no longer true and complete and circumstances are such that a failure to amend would be in substance misleading. you are hereby requested to agree to so supplement any of your written responses to these discovery requests, and in the absence of any written objection to this request, it will be presumed that you have agreed to do so.

44. If you are withholding information pursuant to any privilege, produce a withholding statement and/or privilege log as specified in Tex. R. Civ. P. 193.3.

45. Pursuant to Tex. R. Civ. P. 215, if you fail to comply with proper discovery requests, the Court may make such orders in regard to the failure as are just, including among others, an order requiring you or your attorney, or both, to pay reasonable expenses, including attorney's fees, caused by the failure. This includes timely responses to all requests. you are on notice that needless delays, improper and/or spurious objections will increase litigation fees and costs. Plaintiff(s) will seek fees and costs for unnecessary delays.

46. <u>Plaintiff(s) will agree to a reasonable protective order, which complies with the rules</u>.

   a. Do not respond to these requests, withholding production, pending the entry of a court-ordered protective order. As stated herein, Plaintiff will agree to reasonable extensions of time and a pre-agreed order on protection.
   b. However, you must provide for and obtain an agreement on a protective order first. After such agreement is reached, Plaintiff(s) will agree to abide by the proposed protective order/confidentiality agreement pending court signature and/or entry.
   c. Plaintiff(s) will agree to a protective order that 1) encompasses protection for information which is genuinely confidential, proprietary and/or private, 2) excludes protection for documents for which confidentiality has been waived, 3) complies with the Tex. R. Civ. P., and the local rules of court, 4) does not require document(s) to be filed "under seal" simply because you marked them "confidential."
   d. As to filing documents under "seal," any agreement will include a requirement that the proponent of any document's purported confidentially, which would require document(s) be filed "under seal," must obtain a signed court order requiring such documents be filed under seal within 60 days of marking or producing marked documents as confidential. Otherwise, this filing requirement (will be) waived along with confidentiality of the documents for filling and/or use

in any proceeding.

e.  Plaintiff(s) will not agree to any order which would also require documents be submitted under seal and/or for in-camera inspection, which also prevents such documents from being made part of the official record of the matter during the pendency of such determination.  Likewise, the confidentiality agreement will also include a stipulation that any motion, or filing which would cause any document, on a temporary basis or otherwise, to not be made part of, or included in the Court's official record and/or record on appeal voids the confidentiality agreement.

47.  **Plaintiff(s) seeks Discovery of Electronically Stored Information ("ESI").  In accordance with Tex. R. Civ. P. 196.4, Plaintiff(s) hereby request(s) that all ESI and responsive data or information that exists in electronic or magnetic form be produced in the TIFF (or other format specified below).**

48.  **Plaintiff(s) seeks a conference regarding production of ESI documents as set forth below.  Plaintiff(s) agree(s) to collaborate on an agreed method for producing ESI, which avoids undue burden and expense.  *See In re Weekley Homes, L.P.*, 295 S.W.3d 309 (Tex. 2009).  Plaintiff(s) will entertain (other) methods of production, other than those specified below, which preserve native document format, information, and metadata.  This includes Plaintiff's willingness to consider and reasonably adopt previously utilized and/or prior court-adopted protocols within the relevant jurisdiction.  This may include through prior agreement, a tiered production process, which does not (initially) involve this protocol, but which includes later supplementation utilizing the protocol.   On request, Plaintiff(s) will agree to a reasonable extension(s) and/or accommodations to facilitate the production of ESI in order to avoid (any) undue burden or expense.  Otherwise, images and information will be produced with all metadata preserved under the protocol below.**

49.  All production will be electronic unless otherwise agreed.  Regardless of the preliminary production format, Defendant(s) is/are demanded and must preserve and maintain all documents in their native format with all metadata intact.  This preservation must include a complete and unaltered archive of all documents made the subject of this request and/or relevant to this Matter.  If it is impossible or impracticable to convert native documents to the format specified below, then the production of said material/documents will be in either 1) another format which offers the same or similar content review, search and cross-reference capabilities, or 2) documents in their native format.

50.  All production will be electronic unless otherwise agreed.  Defendant(s) shall produce ESI, documents, and data existing as electronic or magnetic data electronically.  Production responses will be via USB, Flash or "Jump" drive, or external digital hard drive, or by a mutually agreeable digital file transfer protocol or method.  If particular document(s) warrant production in a different format and/or a format not specified herein, Plaintiff(s) will cooperate with Defendant(s) regarding a mutually acceptable format.

51.  Responses must include specific reference to documents by Bates number and range.

16

Documents and/or images must be marked sufficient to identify individual documents, which are responsive to each request including the beginning and ending range of the documents with the entire document produced in a consecutively numbered range.

52.     <u>You must scan paper documents as high-quality images</u>.  Defendant(s) shall scan Black and white paper documents as TIFF files.  Defendant(s) shall scan color documents and photographs, and images in color as 300 dpi single-page JPEG files with the quality setting at high.

53.     <u>Defendant(s) will produce documents as Group IV "TIFF" files</u>.  Unless otherwise specified in this request (or as might otherwise be agreed by the Parties) Defendant(s) shall produce all documents will be produced as 300 dpi single-page TIFF files, using CCITT Group IV compression.  Each page will contain a readable Bates number that does not obscure in any information contained in the original and/or source document.

54.     <u>Reference files will accompany the Tiff images</u>.    All production documents will be produced with extracted text and load files, including the following:

   a.  A "Reference file" in either .dat (Relativity), .opt (Relativity / Concordance / Opticon), .dii (Summation), or .lfp (IPRO) (or other format), so long as the format used by Defendant(s) is readily and accurately convertible to the other formats listed without loss of any information.  This  "reference file" will associate each Bates number with its corresponding single-page image file; and,
   b.  The parties shall also provide an ASCII delimited "load file," such as a data (.dat) or delimited text file (.csv), that will populate fields in a searchable flat database environment, containing one line for each document and fields for first and last Bates number.
   c.  To the extent extractable information exists, data in the load file shall include the following fields of information:
      i.    Beginning and ending document numbers;
      ii.   Beginning and ending attachment ranges (calculated from the first page of the parent document to the last page of the last attached document);
      iii.  "Parent" identification for attachments, i.e., information establishing the relationship between documents and attachments;
      iv.   Page count within a document;
      v.    Date and time created, modified and accessed;
      vi.   Author(s), page count, title and/or the text in the "Title" field of the application file;
      vii.  File type and path;
      viii. The name of the application that generated the native file;
      ix.   A link to the native file if produced; and,
      x.    Custodian information.

55.     Defendant(s) will save and serve Optical Character Recognition (OCR) generated text, in a text file named containing the Bates number of the document, saved in the same directory as

17

the images.   For example, Defendant's Production 0000001.tiff and Defendant's Production 0000001.txt.

56.    <u>Word Processing Documents</u>. Defendant(s) will convert and produce Word, WordPerfect, and PDF documents produced consistent with the above.  The text load file accompanying these images will include the filename of the document as a metadata field.  Defendant(s) will produce extracted text (instead of OCR) unless Defendant(s) redact(s) the document.  In that case, Defendant(s) can produce OCR text.

57.    <u>E-mails will be produced in date and temporal order with attachments extracted</u>. Defendant(s) will preserve all associations between emails and attachments, along with the attachment themselves.  Defendant(s) must produce e-mail attachments in consecutive order, with attachments extracted produced proximately with the e-mail (which attached and sent or forwarded the attachment(s), such that the relationship between the two are identified and preserved using extracted metadata and/or custom metadata which identifies the "parent-child" relationship between e-mail and attachment along with relevant range.   Save for certain exceptions noted below, Defendant(s) will convert Email and attachments to single-page images and produce same as per the specifications set forth herein.  Defendant(s) will also produce a copy of the e-mails produced in their native form, as a PST file.

58.    Specifically as to e-mails, the text load file shall contain, in addition to first and last Bates numbers and delimited fields that capture the data in each of the following metadata fields: To, From, CC, BCC, Subject, date sent, time sent, e-mail thread, number of attachments for emails captured from Microsoft Outlook or Lotus Notes, Conversation Index.   The text file accompanying the TIFF images shall contain the extracted text from the email, with fields, which include the above, as well as information described in 12(a-c) above, without limitation.

59.    Production of OCR text is acceptable for redacted e-mail documents. Attachments shall be processed as though they were separate documents, and the text load file shall identify, for each email, the Bates range of any attachment and/or consistent with the above.

60.    Defendant(s) will produce Excel files and other spreadsheets and digital photographs in native file format, in a separate folder and/or file folder contained on the production media.  The corresponding text load file must contain a field that identifies the file path of the native file corresponding to (these) document(s).  **Do not scan, image, or PDF Spreadsheets.**  Unless previously agreed, these are to be produced in native format, or in a format which 1) produces active/working fields from the spreadsheet, and 2) preserves metadata information described herein and avoids the production of voluminous and needless empty excel and/or spreadsheet files.

61.    A placeholder image with Bates number(s) must be included in the location (within the sequence of other documents produced) which identifies the document by name or Bates number and range and indicates where the spreadsheet is located, i.e., the separate folder.  For example, if an excel spreadsheet is attached to an e-mail, a placeholder document should be included in the e-mail production, but the extracted excel attachment must be served in the separate folder

discussed above.   Responses and/or sufficient information must be provided in/on the placeholder, text load file, or other reference to allow the Parties to search for either the e-mail or the attached spreadsheet and locate and/or identify both, i.e., all communications/attachments within a specific parent-child (document) relationship.

62.   Again, Plaintiff(s) is/are amenable to alternative methods of production, which preserve native content and/or metadata.  But insofar as production involves imaging, the method should ensure that superfluous pages containing zero relevant data or information are not produced.

63.   ESI and/or document subject to the ESI protocol include, without limitation:
   a.   Spreadsheets and tables, e.g., Excel or Lotus 123 worksheets;
   b.   Accounting application data, e.g., QuickBooks, Money, Peachtree data files;
   c.   Sound recordings, e.g., WAV and MP3 files;
   d.   Video and animation, e.g., AVI and MOV files;
   e.   Computer aided design/drawing files e.g., .dwg, .dxf, .rvt;
   f.   PowerPoint presentations, e.g., .PPT and .PPTX;
   g.   Microsoft Access databases, e.g., .MDB and .ACCDB;
   h.   Images, e.g., -JPG, .JPEG, and .PNG;
   i.   Scheduling files e.g., .P3, .P3C, .PRY, and .XER'; and,
   j.   Any other non-text based file type, e.g., other than Microsoft Word, or Word Perfect formats such as .doc, .txt, docx., .rtf, .wpd.

64.   Defendant(s) will seek to avoid unnecessary duplication of identical documents.   If identical documents can be identified by metadata or otherwise, and substituted with single page placeholder documents identifying the same document, Defendant(s) shall do so.  For example, a document attached to an e-mail sent, forwarded, forwarded multiple times, Defendant(s) should produce said document/attachment once and provide place holders elsewhere in lieu of producing the same document multiple times.

65.   In addition to the above, Defendant(s) shall produce a PDF version of the documents made responsive to Requests 1, 2, and 3.  These versions will contain the same Bates range as their TIF counterparts, but will also include the terms "PDF Version", which follows the relevant Bates range.

## NOTICE OF AUTHENTICATION

66.   As per Tex. R. Civ. P. 193.7, Plaintiff(s) intend to use all documents exchanged and produce between the Parties, including but not limited to correspondence and discovery responses during the trial of the matter styled and captioned above.

## PLAINTIFF'S REQUEST FOR PRODUCTION TO DEFENDANT

67.   Request for Production No. 1:  Produce the following documents:

   a.   A certified copy of the Policy.

19

      b.  A certified copy of the Policy Declaration Page(s), for the Subject Property, for the last three years.

68.    Request for Production No. 2:  Produce a color copy of the Claim File.

69.    Request for Production No. 3:  Produce the complete Underwriting File(s) for the Policy or Policies issued to Plaintiff(s) for the Subject Property, for the Policy Period covering the Event

70.    Request for Production No. 4:  Produce the complete Underwriting File(s) for the Policy or Policies issued to Plaintiff(s) for the Subject Property for two Policy Periods and/or years preceding the year of the Event.

71.    Request for Production No 5:  If you contend Plaintiff(s) made Other Claim(s) for property damage(s), which affected your Claim decision(s), for these Other Claim(s), produce certified copies of:

      a.  The relevant underwriting file(s);
      b.  Relevant policies; and,
      c.  The Claim file(s).

72.    Request for Production No. 6:  Produce all Communications with Plaintiff(s).

73.    Request for Production No. 7:  Produce all communications with any person or entity regarding Plaintiff(s), the Subject Property, or Claim.

74.    Request for Production No. 8:  Produce all communications with any local, state, or federal governmental entity related to the Plaintiff(s), Subject Property, Claim, or Lawsuit.

75.    Request for Production No. 9:  Produce all Claim related communications to, from, or involving any:

      a.  Claim handler, personnel, and manager;
      b.  Independent, or public adjuster;
      c.  Inspector or estimator;
      d.  Any non-third party engineer or consultant;
      e.  Any third party contractor, engineer or consultant;
      f.  The direct or indirect managers or supervisors of these individuals or entities.

76.    Request for Production No. 10:  Produce all communications with Plaintiff's insurance agent, which relates to the Claim, the Subject Property, or the Lawsuit. Request for Production No. 11:  Produced Plaintiff's file and/or records kept or maintained by Plaintiff's insurance agent, for which you have custody, control or access.

77.     Request for Production No. 12:   Produce all documents which identify Plaintiff's Insurance Agent.

78.     Request for Production No. 13:   Produce all documents and materials provided to Plaintiff(s) regarding the Claim or Subject Property.

79.     Request for Production No. 14:  Produce all documents and materials, which Plaintiff(s) provided to you, regarding the Claim or Subject Property.

80.     Request for Production No. 15:  Produce all documents and materials, which any person other than Plaintiff(s), provided to you, regarding the Claim or Subject Property.

81.     Request for Production No. 16:   Produce all reports, weather reports, storm reports, interviews, witness statements, surveys, appraisals, damage estimates, proofs of loss, or adjuster report(s) referring to the Claim, Subject Property or damage to the Subject Property.

82.     Request for Production No. 17:   Produce color copies of all visual depictions, reproductions, diagrams, drawings, photographs, video recording or tapes of, or related to the Subject Property before, on or after the date of Loss.

83.     Request for Production No. 18:   Produce all claims handling instructions, manuals, standards or guidelines in effect on the date of loss, which relate to the claims handling practices, procedures and standards for property damage of the type, which is made the basis of the Claim.

84.     Request for Production No. 19:  Produce all documents reflecting the condition of the Subject Property or damages to the Subject Property for similar prior insurance claim(s) (if any) asserted by Plaintiff(s) relative to the Subject Property.

85.     Request for Production No. 20:  If you contend any of the following, then produce all documents evidencing the basis of any of these contentions.

      a.  Plaintiff sustained no damages whatsoever;
      b.  Plaintiff sustained no damages caused by the Event;
      c.  Plaintiff sustained damage, caused by some other event or cause;
      d.  Plaintiff sustained no covered loss under the Policy.

86.     Request for Production No. 21:  Produce document(s) evidencing Reserves set for the Claim.

87.     Request for Production No. 22:  Produced all requests for information to or from any Third Party regarding the Subject Property, the Plaintiff(s), or the Claim or, or any other claim for the last three years.

88.     Request for Production No. 23:  All formal or informal policies, procedures or guidelines utilized to assist, instruct, advise, or guide any person who handled the Claim, or which was

created and/or maintained by you relative to claims handling and/or adjustment of the type of claim(s) made the basis of the lawsuit, which were in effect on the date of loss.

89.     Request for Production No. 24:  Produce all documents and information received or obtained by you through <u>any method whatsoever</u>, from any person(s), entity(ies), or source, which relates to Plaintiff, the Subject Property, the Policy or Claim.  This request is inclusive of discovery in this matter, or any other matter insofar as it relates to the documents and information described in this request.

90.     Request for Production No. 25:  Produce document(s), which identify all person(s) or entities who inspected, assessed causation and/or assessed damages, inclusive of any person(s) who provided you with any report and/or estimate of the cost to repair damages for the Claim.  In your response, segregate between:

    a.  your employees;
    b.  Persons/entities with whom you engaged or contracted for relevant services; and,
    c.  Persons or entities not employed, engaged, or contracted by you.

91.     Request for Production No. 26:  Produce all communications between you and any person(s) who inspected, assessed causation and/or assessed damages, inclusive of any person(s) who provided you with any estimate of the cost to repair damages for the Claim.  This request includes all reports, assessments, and estimates in their partial, preliminary, draft, and final form(s).

92.     Request for Production No. 27:  If you hired or engaged any Third Party, including without limitation an engineer, appraiser, or inspector, to inspect and assess causation and/or assess damages relative to the Subject Property or Claim, produce all:

    a.  Documents which identify this/these person(s) or entity(ies);
    b.  All communications between you and this/these person(s) or entity(ies);
    c.  All reports, assessment, estimates in their partial, preliminary, draft, and final form(s);
    d.  All agreement, contracts, bills, invoices, payments with, by or to this/these person(s) or entity(ies);
    e.  Documents or information indicating how many times you have engaged or hired this/these person(s) or entity(ies) in the past;

93.     Request for Production No. 28:  Produce a copy of the source(s) for prices or price list utilized by you and/or your estimator in your estimate to repair damages.  Insofar as this price list is derived from a program, vendor-maintained database, or collection of prior, similar estimates, produce this underlying data.

94.     Request for Production No. 29:  In addition to the Claim number, produce documents sufficient to identify all internal claim number(s), code(s), name(s), and nomenclature(s), utilized

22

by you internally and/or without your company to refer or identify the Plaintiff, Claim, other than the Plaintiff's name and Claim Number assigned by you and/or listed defined above.

95.    Request for Production No. 30:  Insofar as you assert Plaintiff's Claim was submitted to you untimely, produce documents that support this contention.  Include documents which memorialize the date and time of Plaintiff's loss report and the precise section of the policy relied upon for this contention.  If you assert no such contention, respond to this request with "None."

96.    Request for Production No.  31:  Insofar as you denied any part of the Claim, identify documents:

   a.  Supporting this denial and
   b.  Evidencing the explanations(s) offered and delivered by you to Plaintiff(s) regarding this denial.

97.    Request for Production No. 32:  Produce documents, which identify any depreciation method, formula, program, or table utilized by you in underwriting the Policy.

98.    Request for Production No. 33:  Produce documents, which identify any depreciation method, formula, program, or table utilized by you in adjusting, paying, or denying the Claim.

99.    Request for Production No. 34:  Produce all oral and written statements related to Plaintiff(s), the Claim, or Subject Property.

100.   Request for Production No. 35:  Pursuant to the Tex. R. Civ. Evid., produce all documents evidencing criminal conviction, which you intend to use as evidence to impeach any party or witness.

101.   Request for Production No. 36:  Produce and identify any documents or materials made the specific basis of your response to any Interrogatory No. 2.

102.   Request for Production No. 37:  Produce any documents or materials made the specific basis of your response to any Interrogatory No. 4.

103.   Request for Production No. 38:  Produce any documents or materials made the specific basis of your response to any Interrogatory No. 5.

104.   Request for Production No. 39:  Produce any documents or materials made the specific basis of your response to any Interrogatory No. 6.

105.   Request for Production No. 40:  Produce any documents or materials made the specific basis of your response to any Interrogatory No. 7.

106.    Request for Production No. 41:  Produce any documents or materials made the specific basis of your response to any Interrogatory No. 10.

107.    Request for Production No. 42:  Produce any documents or materials made the specific basis of your response to any Interrogatory No. 11.

108.    Request for Production No. 43:  Produce any documents or materials made the specific basis of your response to any Interrogatory No. 12.

109.    Request for Production No. 44:  Produce any documents or materials made the specific basis of your response to any Interrogatory No. 14.

110.    Request for Production No. 45:   Unless you unequivocally admitted Request for Admission No. 3, produce all documents and materials you contend support your denial and/or refusal to admit said request.

111.    Request for Production No. 46:   Unless you unequivocally admitted Request for Admission No. 7, produce all documents and materials you contend support your denial and/or refusal to admit said request.

112.    Request for Production No. 47:   Unless you unequivocally admitted Request for Admission No. 8, produce all documents and materials you contend support your denial and/or refusal to admit said request.

113.    Request for Production No. 48:   Unless you unequivocally admitted Request for Admission No. 10, produce all documents and materials you contend support your denial and/or refusal to admit said request.

114.    Request for Production No. 49:   Unless you unequivocally admitted Request for Admission No. 12, produce all documents and materials you contend support your denial and/or refusal to admit said request.

115.    Request for Production No. 50:   Unless you unequivocally admitted Request for Admission No. 13, produce all documents and materials you contend support your denial and/or refusal to admit said request.

116.    Request for Production No. 51:   Unless you unequivocally admitted Request for Admission No. 14, produce all documents and materials you contend support your denial and/or refusal to admit said request.

117.    Request for Production No. 52:   Unless you unequivocally admitted Request for Admission No. 15, produce all documents and materials you contend support your denial and/or refusal to admit said request.

118.   Request for Production No. 53:   Unless you unequivocally admitted Request for Admission No. 16, produce all documents and materials you contend support your denial and/or refusal to admit said request.

119.   Request for Production No. 54:   Unless you unequivocally admitted Request for Admission No. 17, produce all documents and materials you contend support your denial and/or refusal to admit said request.

120.   Request for Production No. 55:   Unless you unequivocally admitted Request for Admission No. 19, produce all documents and materials you contend support your denial and/or refusal to admit said request.

121.   Request for Production No. 56:  If you declared the Event as a "Catastrophe" or "Cat," produce documents relevant to this declaration.

122.   Request for Production No. 57:  Produce any reinsurance Policy relevant to coverage for the Claim, or groups of claims, which include the Claim.

123.   Request for Production No. 58:  Produce all communication, reports, periodic reports, assessments, reserve-related communications, with any reinsurer regarding the Claim, or groups of claims, which include the Claim.

124.   Request for Production No. 59:  Produce all communication with any Attorney, regarding the Plaintiff, Subject Property, or Claim, which predates your receipt of any letter of representation relative to the Claim.

125.   Request for Production No. 60:  Produce all communication, between your Attorney(s) and other attorney(s) who/whom does/do not represent you, regarding the Plaintiff, the Subject Property, or Claim, or groups of claims, which do include, or may include the Claim.

126.   Request for Production No. 61:  Produce the resume or CV for all consultants, engineers, experts, which you consulted, utilized or retained regarding the Claim.

## PLAINTIFF'S INTERROGATORIES TO DEFENDANT

127.   Interrogatory No. 1:   Identify and describe the name and/or entity name, title, address, telephone number, employer, and description of their involvement in the Claim for any person or entity that:

     a.   Participated Claims assessment, handling, adjustment, or payment;
     b.   Communicated with you regarding the Plaintiff, Subject Property, or Claim;

128.   Interrogatory No. 2:  If you contend the Policy does not cover some or all of the damages to the Subject Property, describe and/or identify:

     a.   The scope, cause, and origin of damages you contend is/was not covered; and,

25

    b.  All Policy-based term(s), exclusion(s), or the contractual basis for your contention(s) as to the absence of and/or exclusion from coverage for part or all of the damage(s);

    c.  The factual basis for your assertion (if any) in the absence of coverage, covered damages, or excluded coverage; and,

    d.  All documents supporting your response a), b), and c).

129.    Interrogatory No. 3:  Describe the history of any estimates obtained by you and/or provided to Plaintiff(s), including without limitation all drafts, revisions, and reconciliations of any estimates.

130.    Interrogatory No. 4:  If you contend that Plaintiff(s) failed to give you proper and/or timely notice of the Claim, describe the details of this contention and how any alleged failure prejudiced your ability to adjust the Claim.  Include in this description and/or identify documents sufficient to describe or explain:

    a.  The date of when you first received notice of the Claim;

    b.  The date you first discussed the Claim with Plaintiff(s) if different from your response to a) above;

    c.  The date you inspected first inspected the property;

    d.  The date in which you delivered your Claim response to Plaintiff;

    e.  The method you used to communicate your conclusions.

131.    In the event, one or more of the proceeding items of information exists, or is made the part basis for your assertions relative to any alleged failure of proper or timely notice, explain this in your response.

132.    Interrogatory No. 5:  Do you contend Plaintiff(s) failed to provide you any requested information or materials, which prejudiced your ability to evaluate and adjust the Claim?  If so, explain your assertion in this regard and include:

    a.  A detailed description of how this alleged failure precluded your evaluation and adjustment of the Claim;

    b.  A description of whether or not you actually did evaluate, adjust and respond to the Claim

133.    Interrogatory No. 6:  If you contend Plaintiff's acts or omissions voided, nullified, waived or breached the Policy, state the factual basis of this contention and identify all documents and policy terms which you assert support this contention

134.    Interrogatory No. 7:  If you contend Plaintiff(s) failed to satisfy condition precedent or any covenant contained in the Policy, explain the basis of this contention.

135.    Interrogatory No. 8:  Identify all requests for material and information sought by you regarding the Claim.

26

136.    Interrogatory No. 9:  Identify all correspondence sent by you which explains any part of the Claim which you denied, or explains your Damage estimate.

137.    Interrogatory No. 10:  If you anticipated litigation in relation to the Claim, identify this date and explain the specific basis of this contention, identifying all documents, which support this contention.

138.    Interrogatory No. 11:  If you applied depreciation as part of your claims adjustment process, explain your method in detail.  Identify all components of the Subject Property, by component name and age, to which you applied depreciation along with explaining the method you applied for each.  If you applied the same level of depreciation, to all component parts of the Subject Property as a whole, explain this in your answer.   If this method differs from depreciation applied in underwriting the policy or any other context, explain the difference.  If this method is contained in any written policy, instruction or guideline, identify all such documents.

139.    Interrogatory No. 12:  Describe whether you applied depreciation to labor or any repair related activity (or any portion thereof).  Include amounts involved, the method applied and the name and/or insurance industry name for the method.

140.    Interrogatory No. 13:  In lieu of additional requests for admission, identify facts, which you will agree to admit and/or agree to jointly stipulate, in order to streamline litigation and reduce costs.  This might include, without limitation, correct party information, date of loss, loss coverage, type of coverage (for example ACV vs. RCV), coverage limits.

141.    Interrogatory No. 14:   Identify all documents which support each defense and/or affirmative defense described in your Original Answer, including all amendments thereto.

142.    Interrogatory No 15:  As it relates to your response to Request for Production No. 20, explain how or why the documents produced in response to this request, support your assertion(s) (if any) that Plaintiff(s):

    a.  Sustained no damages whatsoever;
    b.  Sustained no damages caused by the Event;
    c.  Sustained damage, caused by some other event or cause;
    d.  Sustained no covered loss under the Policy.

143.    Interrogatory No. 16:   Identify, and describe the work performed, or information provided by each person(s) or entities who/whom/that inspected, assessed causation, assessed damages, inclusive of any person(s) who provided you with any estimate of cost to repair damages for the Claim, or provided you with information considered by you as part of your assessment of the Claim. In your response, segregate between and/or explain the role of each:

    a.  Person(s) employed by you

b.  Person(s) / entities with whom you engaged or contracted for relevant services; and,

c.  Person(s) or entities not employed, engaged, or contracted by you.

144.    Interrogatory No. 17:  Identify and describe the name, title, address, telephone number, employer, description of their involvement in the Claim for any person or entity that participated in the creation of your responses to these interrogatories.

## PLAINTIFF'S REQUEST FOR ADMISSIONS TO DEFENDANT

145.    Request for Admission No. 1:  Admit the Policy is an Actual Cash Value or "ACV" policy.

146.    Request for Admission No. 2:  Admit the Policy is a Replacement Cost Value or "RCV" policy.

147.    Request for Admission No. 3:  Admit that aside from the Claim, Plaintiff(s) has/have submitted no previous claim for damages to the subject Property.

148.    Request for Admission No. 4:  Admit you reinsured the Policy.

149.    Request for Admission No. 5:  Admit you created or hired someone to create a damage repair estimate for Plaintiff's Claim.

150.    Request for Admission No. 6:   Admit you did not create or hire someone to create a damage repair estimate for Plaintiff's Claim.

151.    Request for Admission No. 7:  Admit one or more persons who participated in the adjustment of the Claim did not visit or physically inspect the Subject Property.

152.    Request for Admission No. 8:  Admit you depreciated labor as part of your estimate.

153.    Request for Admission No. 9:  Admit you denied part or all of Plaintiff's Claim based on the untimeliness of the Claim.

154.    Request for Admission No. 10:  Admit Plaintiff(s) timely reported the Claim.

155.    Request for Admission No. 11:  Admit you denied the Claim in whole or in part because you contend the Claim is not covered by the Policy.

156.    Request for Admission No. 12:  Admit you did not request a sworn proof of loss from the Plaintiff(s).

157.    Request for Admission No. 13:  Admit you did not request a sworn proof of loss from any insured person other than the Plaintiff(s).

158.    Request for Admission No. 14:  Admit a windstorm caused the damages reported in the Claim.

159.    Request for Admission No. 15:  Admit windstorm is/are a Covered Peril under the Policy.

160.    Request for Admission No. 16:  Admit the Policy was in full force and effect on the Date of Loss.

161.    Request for Admission No. 17:  Admit Plaintiff(s) paid all required premiums under the policy as of the Date of Loss.

162.    Request for Admission No. 18:  Admit you set reserves relative to the Claim.

# EXHIBIT B-3

9/30/2019 7:16 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37218851
By: F Abdul-Bari
Filed: 9/30/2019 7:16 AM

## CAUSE NO. 2019-59738

| | | |
|---|---|---|
| **DEBORAH STANFORD,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **STATE FARM LLOYDS,** | § | |
| *Defendant*. | § | **269TH JUDICIAL DISTRICT** |

---

### DEFENDANT'S ORIGINAL ANSWER

---

Defendant State Farm Lloyds files this Original Answer to Plaintiff's Original Petition:

**I.**
**GENERAL DENIAL**

1.     Defendant generally denies all material allegations contained in Plaintiff's Original Petition, and any amendment thereto, and demands strict proof thereof as allowed under the laws of the State of Texas. By this general denial, Defendant requires Plaintiff to prove every fact to support the claims in Plaintiff's Original Petition, and any amendment thereto, by a preponderance of the evidence.

**II.**
**DEFENSES**

2.     **Policy Coverage Provisions.** Under the Insuring Agreement, Plaintiff bears the burden to prove the actual cash value of damage resulting from an occurrence of accidental direct physical loss to the insured property during the policy period. Plaintiff lacks proof of damages resulted from any accidental direct physical loss during the policy period beyond those damages found by State Farm under the Policy.

3.      **Limit of Liability.** State Farm's liability, if any, is limited to the amount of the policy limits under the subject policy, pursuant to the "Limit of Liability" and other clauses contained in the policy sued upon.

4.      **Deductible/Offset.** Defendant is entitled to an offset or credit against Plaintiff's damages, if any, in the amount of Plaintiff's $1,689.00 deductible.

5.      **Wear and Tear, Deterioration.** Plaintiff's claims are barred, in whole or in part, because the damages and losses alleged in Plaintiff's Original Petition, none being admitted, were proximately caused in whole or in part by wear and tear and related aging issues. The policy at issue provides that wear and tear does not fall under the coverage of the policy:

**SECTION I – LOSSES NOT INSURED**

1.  We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

* * * * *

    g.  wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown.

Part of the property damages Plaintiff is claiming to the insured property occurred over time through wear, tear, and deterioration. These conditions are not insured under the policy at issue.

6.      **Loss Settlement Provision/Condition: Replacement Cost Benefits**. Under the Insuring Agreement, Plaintiff must first repair or replace the damaged property to recover replacement cost benefits and the Policy limits such coverage to costs "necessarily" spent to repair the damaged property. The Policy specifically provides:

**FE-3533.1 HOMEOWNERS POLICY ENDORSEMENT (Texas)**

**SECTION I - LOSS SETTLEMENT**

**COVERAGE A-DWELLING**

Items 1. and 2. are replaced by the following:

1. **A1** - **Replacement Cost Loss Settlement - Similar Construction.**

   a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations,** the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING,** except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations,** whichever is less;

      (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and give prompt notice to us after the work has been completed; and

      (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of **a** building or other structure, except as provided under **Option OL** - **Building Ordinance or Law Coverage.**

Plaintiff lacks proof of completed repairs or replacement to any covered property damage connected with her insurance claim, and regardless, the most Plaintiff can recover under the Policy is the actual cost of Plaintiff's necessary repairs. As such, Plaintiff's recovery in this case, if any, is limited to the actual cash value of the covered property damage.

7.      **Mold, Rot or Fungus.**  Plaintiff's claims are barred, in whole or in part, because the damages and losses alleged in Plaintiff's Original Petition, none being admitted, were proximately cause in whole or in part by rot or fungus. The policy at issue specifically provides:

**SECTION I – LOSSES NOT INSURED**

1.   We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

* * * * *

i.   Mold, fungus or wet or dry rot;

* * * * *

**FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSMENT**

**DEFINITIONS**

The following definition is added:

"**fungus**" means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I – LOSSES NOT INSURED**

* * * * *

Item 1.i is replaced with the following:

i.   wet or dry rot;

In item 2., the following is added as item g.:

g.   **Fungus**. We also do not cover:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, by **fungus**;

(2) any remediation of **fungus**, including the cost to:

(a) remove the **fungus** from covered property or to repair, restore or replace that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

Part of the damages Plaintiff is claiming to the guest bathroom, attic, and other areas of the insured property resulted from rot or fungus. These conditions are not insured under the policy at issue.

8.      **Bona Fide/Legitimate Dispute.** A bona fide/legitimate dispute exists precluding Plaintiff's recovery of damages under extra-contractual theories including for violations of the Texas Insurance Code or any other statutory or common law authority.

9.      **Cap on Punitive Damages.** TEX. CIV. PRAC. AND REM. CODE §41.001, *et seq.,* applies and punitive damages awarded, if any, are subject to the statutory limit set forth therein, other applicable statutory authority, and the common law. Further, unless Plaintiff proves Defendant's liability for punitive damages, and the amount of punitive damages, if any, by clear and convincing evidence, any award of punitive damages would violate Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article 1 of the Texas Constitution.

**PRAYER**

Defendant prays that Plaintiff take nothing by her claims, and that Defendant recover its costs, fees, and expenses, and such other further relief to which Defendant may show itself to be justly entitled to, in law and in equity.

Respectfully submitted,

**NISTICO, CROUCH & KESSLER, P.C.**

By:   */s/ M. Micah Kessler*
          M. Micah Kessler
          State Bar No. 00796878
          Jazmine J. Ford
          State Bar No. 24109881
1900 West Loop South, Suite 800
Houston, Texas 77027
Telephone: (713) 781-2889
Telecopier: (713) 781-7222
Email: mkessler@nck-law.com
Email: jford@nck-law.com
**COUNSEL FOR DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

      I certify that a true and correct copy of the foregoing instrument was served on all parties through counsel of record in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on September 30, 2019, in the manner(s) prescribed below:

    Stephen R. Walker
    Gregory J. Finney
    Juan Solis
    Law Offices of Manuel Solis, PC
    6657 Navigation Boulevard,
    Houston, Texas 77011
    **VIA EFILE**

                                     */s/ M. Micah Kessler*
                                       M. Micah Kessler

Unofficial Copy Office of Marilyn Burgess District Clerk